UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALAN BARNARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case no. 4:16-CV-1291 PLC |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner of Operations, Social | ) |
| Security Administration, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Alan Barnard (Plaintiff) seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration (SSA), denying his application for a period of disability and Disability Insurance Benefits under the Social Security Act.[1] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

*I.  Background and Procedural History*

In February 2013, Plaintiff filed an application for a period of disability and Disability Insurance Benefits. (Tr. 129-130). The SSA denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 70-76). The SSA granted Plaintiff's request for review and conducted a hearing on February 2, 2015. (Tr. 33-42). In a decision dated April 13, 2015, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, through September 30, 2014, the date last insured. (Tr. 22).

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 12).

1

The SSA Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as Defendant's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

A.     *ALJ Hearing*

Plaintiff, then forty years of age, appeared with counsel at the administrative hearing on February 2, 2015. (Tr. 35). Plaintiff stated that he had been unable to work since November 2011 due to issues with "mobility and pain." (Tr. 32, 37). Plaintiff stated that he could not stand for more than thirty minutes without pain and he only felt relief when lying down. (Tr. 37-39). Plaintiff had to lie down five to six times per day, and even after lying down to sleep, he woke up in pain. (Id.). Plaintiff stated that the most he could lift was five to ten pounds. (Tr. 39). Plaintiff explained that Dr. Alan Morris and Physician's Assistant Ryan Rogers assigned him significant workplace limitations. (Tr. 35).

In regard to activities of daily living, Plaintiff stated that he was unable to perform yard work or vacuum. (Tr. 40). Plaintiff testified that he experienced both good and bad days, but generally had two to three bad days per week. (Tr. 40). Plaintiff explained that even if he had a sit-down job, there would be days he could not work or would have to go home early. (Id.).

The ALJ briefly questioned Plaintiff about a Cooperative Disability Investigation (CDI).[2] (Id.). Specifically, the ALJ examined Plaintiff in regard to the CDI investigator's observations that Plaintiff "was using the cane one hand to the other." (Id.). Plaintiff explained that he "shifted" the cane between hands because he was right-handed so, when he had to "carry

---

[2] The CDI unit conducted surveillance of Plaintiff's residence and followed him to a consultative examination on October 15, 2014 because "[a]n anonymous source reported that [Plaintiff] is faking his disabilities." (Tr. 614).

something," he moved the cane from his right hand to his left hand but "surgery on my left shoulder makes it a little uncomfortable. . . when I have to put weight on my cane . . . . It hurts so I switch sides . . . ." (Id.).

B.  *Relevant Medical Records*

On February 15, 2012, Plaintiff saw Dr. Jennifer Szalkowski, his primary care physician, and complained of the following: (1) intermittent middle- and lower-back pain radiating to both thighs; (2) numbing and tingling in his legs; (3) insomnia for several months; and (4) a bulge in his abdomen upon straining. (Tr. 252-253). Dr. Szalkowski's objective examination revealed "bilateral thoracic tenderness, paravertebral muscle spasm, bilateral thoracic tenderness, and bilateral lumbosacral tenderness." (Tr. 255). Dr. Szalkowski ordered an x-ray of Plaintiff's lumbosacral spine and prescribed him Mobic, Robaxin, and Ambien. (Tr. 255-258). The x-ray of Plaintiff's lumbar spine revealed no radiographic abnormality. (Tr. 352).

On May 21, 2012, Plaintiff visited Dr. Dale Klein at Pain Management Rehabilitation, complaining of worsening back and leg pain that had caused him to discontinue employment. (Tr. 238). Plaintiff also said that his pain was exacerbated when he stood for extended periods and was relieved through rest. (Id.). Plaintiff reported that over-the-counter analgesics provided little relief and hydrocodone provided mild relief. (Id.). Dr. Klein diagnosed Plaintiff with lumbar radicular syndrome and myofascial pain syndrome, and he noted possible facet arthropathy. (Tr. 241). On May 29, 2012, Plaintiff returned to Pain Management Rehabilitation to review his MRI, which showed mild disc bulging and facet osteoarthritis. (Tr. 237, 242). Dr. Klein recommended "conservative therapies" and noted that Plaintiff "desires to have a prescription for a controlled substance. At this time, I do not feel comfortable providing a prescription for a controlled substance analgesic." (Tr. 242-43). When Plaintiff saw Dr.

3

Szalkowski on May 31, 2012, he reported "issues with Dr. Klein" and said he was "now looking for a new pain provider." (Tr. 274).

On June 28, 2012, Plaintiff saw Dr. Szalkowski for back pain, renal impairment, and ear pain, and Dr. Szalkowski increased his Tramadol. (Tr. 280). On August 8, 2012, Plaintiff complained of worsening back pain, and Dr. Szalkowski changed Plaintiff's medication from Robaxin to Skelaxin. (Tr. 287-89). In September 2012, Plaintiff saw Dr. Szalkowski two more times for back pain, abnormal kidney function, elbow pain, and depression. (Tr. 299, 403, 407). On September 25, 2012, he reported that he was "overall pain free" and displayed normal mobility of his back. (Tr. 403).

On October 26, 2012, Plaintiff presented to the emergency room at Barnes-Jewish St. Peters Hospital due to "traumatic" back pain. (Tr. 356). Plaintiff stated that he injured his back while moving his grandfather, who was quadriplegic. (Tr. 357). The doctor diagnosed him with sciatica and prescribed Vicodin. (Tr. 357).

On February 18, 2013, Plaintiff saw Dr. Margaret Grisell, an orthopedic surgeon, for back pain. (Tr.433). Dr. Grisell noted that her examination was "limited by his being in pain that is out of proportion to the exam[.]" (Tr. 437). Plaintiff returned to Dr. Grisell on April 15, 2013, and she noted that Plaintiff "continues to have pain that is out of proportion to the examination." (Tr. 442). Dr. Grisell wrote: "I again reviewed his imaging with him, and we talked about his diffuse degenerative changes in his low back and the fact that these are really very mild." (Tr. 443). She concluded she had "no surgical intervention to offer him" and referred him to pain management. (Id.).

Plaintiff saw Dr. Richard Gahn, a pain medicine specialist on April 30, 2013, complaining of "persistent low back pain radiating into the left buttock and posterior aspect of

the left leg intermittently as far down as the calf and ankle." (Tr. 453) Plaintiff's MRI revealed "moderate disc degeneration at L3-4, L4-5, and L5-S1." (Tr. 455). On May 7, 2013, Dr. Gahn administered a lumbar steroid injection. (Tr. 456).

On August 20, 2013, Plaintiff underwent an MRI of the cervical spine without contrast, which showed "small right paracentral disc protrusion at C3-C4 with mild right uncovertebral joint osteoarthritis with mild right neural foraminal narrowing." (Tr. 488). An MRI of Plaintiff's lumbar spine without contrast showed mild degenerative disc disease at L4-S1. (Id.).

On September 10, 2013, Plaintiff presented to the emergency room at St. Joseph Hospital West with neck, back, and leg pain after a fall. (Tr. 578). Plaintiff exhibited normal range of motion and tenderness in his midline upper lumbar area. (Tr. 580). The emergency room doctor prescribed Tramadol. (Tr. 582).

On September 15, 2013, Plaintiff presented to the emergency room at Barnes-Jewish St. Peters for aching and stabbing right-sided chest pains. (Tr. 494). Plaintiff received a chest x-ray, and the doctor prescribed hydrocodone. (Tr. 495). Plaintiff's chest x-ray showed no pulmonary infiltrate. (Tr. 497).

Plaintiff saw Dr. Adam LaBore for back pain on October 1, 2013. (Tr. 602). Upon physical examination, Dr. LaBore observed: "No focal sensory or motor deficits in the upper or lower extremities, reflexes are normal and symmetric." (Id.). Dr. LaBore reviewed Plaintiff's MRI with Plaintiff and explained, "There is minimal single-level disc bulge in the cervical spine, otherwise, no significant findings." (Id.). Dr. LaBore concluded "I have no additional recommendations for workup and am uncertain of the diagnosis that would help direct treatment." (Id.). Dr. LaBore opined that "it may be worth consulting with a rheumatologist and potentially neurologist[.]" (Id.).

5

In January 2014, Dr. Szalkowski informed Plaintiff that an MRI of his shoulder on January 20, 2014, showed:

> partial thickness articular sided tear of the left posterior infraspinatus tendon at the footprint without retraction; intrasubstance tear of the left subscapularis tendon; nondisplaced tears of the superior labrum (focally) as well as the posterior inferior labrum extending from approximately 9:00-6:00; mild left glenoid chondrosis; mild left acromioclavicular osteoarthritis with capsular hypertrophy and pericapsular edema.

(Tr. 460). Dr. Szalkowski advised Plaintiff to "set up an appointment with orthopedics." (Id.).

On January 29, 2014, Plaintiff saw Dr. Matthew Melander, an orthopedic surgeon, for left shoulder pain. (Tr. 559). Dr. Melander diagnosed Plaintiff with a "partial rotator cuff tear" and "impingement syndrome," and he administered a lidocaine injection. (Id.). When Plaintiff next saw Dr. Melander on February 26, 2014, he reported no relief from the injection or home exercises. (Tr. 558).

On March 6, 2014, Dr. Melander performed a "diagnostic arthroscopy, left shoulder; arthroscopic debridement of type I SLAP tear, left shoulder; arthroscopic supraspinatus repair, left shoulder; arthroscopic subacromial decompression; arthroscopic distal clavicle resection." (Tr. 560). At a follow-up appointment on March 14, 2014, Plaintiff reported some pain, but Dr. Melander noted that the incisions had healed appropriately. (Tr. 558). On April 4, 2014, Dr. Melander noted that Plaintiff's wound had healed. (Tr. 557). Plaintiff received physical therapy from March to May 2014. (Tr. 512-538).

On April 21, 2014, Plaintiff sought treatment for back pain at St. Louis Neuropathy and Pain Relief. (Tr. 478). Physician's Assistant Ryan Rogers noted Plaintiff's antalgic gait and use of a cane. (Id.). Plaintiff informed Mr. Rogers that, during a recent trip to Walmart, he needed help to his car because he was in so much pain. (Id.). Plaintiff also reported that the epidural injections he had received did not help, but rather worsened his pain. (Id.). Mr. Rogers ordered

Plaintiff a back brace and prescribed tizandine hydrochloride. (Id.). Plaintiff received a diagnostic/therapeutic lumbar facet injection on May 7, 2014. (Tr. 475).

Plaintiff followed up with Mr. Rogers on June 23, 2014.[3] (Tr. 472). Mr. Rogers informed Plaintiff: "I would be happy to give him some pain medications for an acute basis however long-term medication management would have to be done at another clinic." (Id.).

On July 11, 2014, Plaintiff underwent an x-ray on his right knee with normal results. (Tr. 544). At a follow-up appointment on July 21, 2014, Mr. Rogers increased Plaintiff's hydrocodone dosage and prescribed Lidoderm patches. (Tr. 471).

Plaintiff presented to the emergency room at Barnes-Jewish St. Peters Hospital on July 23, 2014 with back pain. (Tr. 550). On July 25, 2014, he presented to the emergency room at St. Joseph Hospital West with back and leg pain. (Tr. 590). Plaintiff reported that hydrocodone and lidocaine patches did not relieve the pain. (Id.).

On July 31, 2014, Mr. Rogers completed a medical source statement for Plaintiff. (Tr. 464). Mr. Rogers opined that Plaintiff: (1) could sit or stand/walk for only about two hours in an eight-hour work day; (2) required unscheduled breaks throughout the day; and (3) could only rarely carry ten pounds. (Id.). Mr. Rogers also stated that Plaintiff's pain would often interfere with his attention and concentration and would likely make him absent from work one to two times per month. (Tr. 464-465). Plaintiff would have "slight" limitations "in the ability to work stress." (Id.).

Plaintiff followed up with Dr. Melander on September 26, 2014. (Tr. 556). Dr. Melander diagnosed Plaintiff with bursitis of the left shoulder and prescribed a Medrol Dosepak. (Id.).

---

[3] Plaintiff's insurance denied coverage for further medial branch blocks, radiofrequency ablation, and a back brace. (Tr. 472).

7

On October 15, 2014, Plaintiff saw Dr. Alan Morris for a physical consultative evaluation. (Tr. 562). Dr. Morris noted that Plaintiff could walk fifty feet with his cane and twenty-five feet without his cane. (Tr. 563). Dr. Morris also noted that Plaintiff walked with a slight limp favoring his right lower extremity. (Id.). Plaintiff was able to toe-walk four steps with external support and complete a tandem gait with external support. (Id.). However, due to decreased balance and back pain, Plaintiff was unable to heel walk and squat. (Id.). Dr. Morris noted that Plaintiff could rise from a chair using his cane and get on and off the examining table without his cane, although he had to use his hands. (Id.). Dr. Morris further noted that Plaintiff had to use his hands to push himself up from supine to sitting. (Id.). Dr. Morris found that Plaintiff could only occasionally lift and carry up to ten pounds, and never lift or carry anything heavier. (Tr. 567). Dr. Morris also found that Plaintiff could only sit or stand for thirty minutes and walk for fifteen minutes at a time, and he needed a cane to ambulate. (Tr. 568).

### III. *Standards for Determining Disability Under the Social Security Act*

Eligibility for disability benefits under the Social Security Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, Defendant engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

### IV. The ALJ's Determination

The ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 404.1520 and found that Plaintiff did not engage in substantial gainful activity between his alleged onset date of November 25, 2011 and his date last insured of September 30, 2014, and Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ conclude that Plaintiff had the severe impairments of "discogenic and degenerative disorders of the spine and status-post left shoulder arthroscopy," and the nonsevere impairment of depression. (Tr. 15).

The ALJ found that Plaintiff had no limitations in activities of daily living. (Id.). The ALJ noted that Plaintiff was able to make simple meals, drive a car, and go outside once or twice a day. (Id.). Based on his review of Plaintiff's testimony and medical records, the ALJ determined that Plaintiff had the RFC to perform light work "except that [Plaintiff] requires a sit/stand option every thirty minutes and is not able to reach overhead." (Tr. 17).

The ALJ thoroughly reviewed Plaintiff's medical records and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

9

symptoms" but Plaintiff's statements "concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible." (Tr. 19). According to the ALJ, Plaintiff's objective testing "showed only mild or [age-appropriate] degenerative disc disease," and his treatment notes "indicate at best, ailments that appear troublesome but do not impose limitations of such significance as to preclude sustained competitive employment." (Id.). The ALJ observed that none of Plaintiff's treating physicians had recommended that he not seek employment, and there was no evidence that Plaintiff "ever required significant hospitalization." (Id.). The ALJ also noted the findings of the CDI, which revealed "a rather opportunistic use of a cane when it appears to serve the claimant's purpose; relying heavily on a cane for examination purposes, however not needed when perceived to be out of view." (Tr. 20).

In regard to the medical opinion evidence, the ALJ noted that Dr. Morris, the consultative physician, diagnosed Plaintiff with "chronic lumbar back pain with facet arthrosis and postoperative status arthroscopic surgery left shoulder with limited motion" but stated "these are merely subjective symptoms and not objective diagnoses." (Id.). In regard to Mr. Rogers' medical opinion, the ALJ explained that the severe limitations he imposed were not supported by any treatment notes and were contrary to the objective testing contained in the record. The ALJ further explained that Mr. Rogers' opinions were entitled to little weight because he was not an acceptable medical source as recognized by the Social Security Act. (Id.).

The ALJ determined that Plaintiff was able to perform past relevant work, such as that of a cashier. (Id.). The ALJ concluded: "[C]onsidering [Plaintiff's] age, education, and work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is, therefore, "not disabled." (Tr. 21).

## V. Standard of Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## VI. Discussion

Plaintiff claims that the ALJ erred in failing to properly weigh medical opinion evidence. (ECF No. 22). More specifically, Plaintiff argues that the ALJ: (1) failed to consider and weigh the opinion of Dr. Morris, a one-time consultative examiner; and (2) improperly considered the

fact that none of Plaintiff's treating physicians recommended that he not seek employment. (ECF No. 22 at 15, 17). In response, Defendant asserts that the ALJ appropriately considered Dr. Morris's opinion and the treating physicians' opinions. (ECF No. 29 at 15-18).

In making a disability determination, the ALJ shall consider the medical opinions in the case record together with the rest of the relevant evidence in the record. 20 C.F.R. §§404.1527, 416.927. "The amount of weight given to a medical opinion is to be governed by a number of factors, including the examining relationship, the treatment relationship, consistency, specialization, and other factors." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)).

Although the ALJ did not specify the amount of weight assigned to Dr. Morris's opinion, it is clear from the decision that he afforded that opinion little weight.[4] In this case, Dr. Morris examined Plaintiff in a single visit, which lasted thirty-five minutes. (Tr. 562). The ALJ considered Plaintiff's consultative examination and found that Dr. Morris's diagnosis was based "merely on subjective symptoms, rather than objective diagnoses." (Tr. 19). The ALJ further found that Dr. Morris's opinion was not consistent with the objective testing in the record, which "showed only mild or age appropriate degenerative disc disease." (Tr. 19).

Dr. Morris's opinion was also contrary to the treatment notes of Plaintiff's treating physicians. For example, Dr. Klein recommended conservative therapies and declined to prescribe long-term pain medication. Dr. Grisell found that Plaintiff's pain was "out of proportion to the examination" and observed that the diffuse degenerative changes in Plaintiff's lower back "are really very mild." Likewise, Dr. LaBore noted "minimal single-level disc bulge in the cervical spine, otherwise, no significant findings." None of Plaintiff's treating physicians

---

[4] Plaintiff cites no support for his position that the ALJ was required to specify the amount of weight assigned to the opinion of a non-treating physician.

recommended surgical intervention for his back. Given that Dr. Morris examined Plaintiff only one time and his opinion was inconsistent with the evidence in the record, the ALJ properly discounted that opinion. Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987) ("The report of a consulting physician who examines a claimant once does not constitute 'substantial evidence' upon the record as a whole."). The Court finds no error in the ALJ's decision to assign little weight to Dr. Morris's opinion.

Plaintiff also claims that the ALJ may not draw an adverse inference when no treating or examining source makes a statement concerning Plaintiff's inability to work. (ECF No. 22 at 18). Defendant acknowledges the Eighth Circuit precedent holding that a conclusory opinion from a treating physician that a claimant is disabled or unable to work is not entitled to special deference. However, Defendant argues "[t]his does not mean . . . that an ALJ cannot consider the absence of treating physician opinions indicating disability in the record." (ECF No. 29 at 17).

Plaintiff cites no case law in support of his position that an ALJ may not consider the absence of treating physician opinions relating to a claimant's ability to work. To the contrary, the Eighth Circuit has considered this factor when reviewing ALJs' disability decisions. See, e.g., Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined [the plaintiff] submitted a medical conclusion that she is disabled and unable to perform any type of work."); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) ("[N]o treating physician ever indicated that [the plaintiff] was unable to work for any 12-month period within the time encompassed by her alleged disability."). See also Fischer v. Barnhart, 56 Fed. Appx. 746, 748 (8th Cir. 2003) ("[I]n discounting [the treating physician's] opinion, the ALJ properly noted that ... [the treating physician] had never recommended any work restrictions for

13

[the claimant]"). Likewise, the Eastern District has recognized that an ALJ may consider "that no treating physician ever imposed any permanent limitations on Plaintiff in treating notes." Reinhardt v. Colvin, No. 4:15-CV-169-NCC, 2015 WL 8770716, at *10 (E.D.Mo. Dec. 15, 2015). See also Tarkington v. Berryhill, No. 4:15-CV-1600-JMB, 2017 WL 976938, at *12 (E.D.Mo. Mar. 13, 2017). The Court therefore concludes that the ALJ did not err in considering that none of Plaintiff's treating physicians opined that he was unable to maintain gainful employment.

## VII. *Conclusion*

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's final decision denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

/s/ Patricia L. Cohen
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th Day of May, 2018